1732, 1733.    ARMOUR & COMPANY *v.* BLUTHENTHAL &
BICKART, and *vice versa.*

The petition as amended sets out a good cause of action, and the court
erred in dismissing it on demurrer.    The special ·demurrers filed were
fully met by the amendments allowed, and' the court did not err in
overruling these· demurrers.

Complaint, from city court of Atlanta—Judge Reid.    January 4, 1909.

Argued April 15,—Decided October 5, 1909.

*Anderson, Felder, Rountree & Wilson,* for· plaintiffs.

*Slaton & Phillips,* for defendants.

HILL, C. J.    The Toxaway Hotel Company, operating a hotel
at Lake Toxaway, North Carolina, ordered from Armour & Company an itemized quantity of hotel supplies, largely consisting of
"fresh meat." ' Armour & Company, before filling the order, requested from the hotel company a financial statement; and, in
reply to this request, the following letter was written:    "For your
confidential information, the Toxaway Hotel Company consists of
the following persons:    John C. Burrowes, president, Lake Toxaway, N. C.; I. H. Aiken, vice-president, Lake Toxaway, N. C.;
M. L. Bickart, secretary, Atlanta, Ga.; A. Bluthenthal, director,
Atlanta, Ga.; F. Bluthenthal, director, Atlanta, Ga.    We have not
considered it necessary up to the present time to make any financial statement as to the resources and the backing of the hotel
company, as they are absolutely gilt edge.    The bringing of this
property to a good condition, numerous necessary buildings, etc.,
have made it necessary for us to ask our friends to be patient, because in the ultimate thorough success of the whole proposition
there is no possibility of a doubt.    Of this your Mr. Jerome, who
has been here, and who is a man who knows values, can, I believe,
inform you affirmatively.    In connection with these matters I
therefore refer you to the firm of Messrs. Bluthenthal & Bickart
of Atlanta, Ga., and feel sure that their advice in the matter will
be entirely satisfactory to you, without the detailed statement you
have sent me being filled out.    I trust that this will be satisfactory,"
etc.    This letter was signed by John C. Burrowes, as president of
the Toxaway Hotel Company, and was addressed to C. E. Clarkson,
of the credit department of Armour & Company, Chicago, Ill.    It

was not sent directly to Armour & Company or to their credit agent, but was forwarded by the Toxaway Hotel Company to Bluthenthal & Bickart. When Bluthenthal & Bickart received this letter from the Toxaway Hotel Company they mailed it to Armour & Company, accompanied by a letter written by themselves, as follows: "We enclose herewith a letter from Mr. J. C. Burrowes, dated July 21st, which he has forwarded to us for our approval. We beg to advise that each shipment that you make to the Toxaway Hotel Company will be perfectly safe, and the bill will be taken care of properly. You will please ship the car of fresh meat that has been ordered from you by Mr. Burrowes, and we hereby guarantee payment of the bill. Please acknowledge receipt and oblige."

Armour & Company immediately, on receipt of this letter from Bluthenthal & Bickart, replied as follows: "We beg to ackowledge. receipt of your favor of the 23rd, enclosing letter from Mr. J. C. Burrowes, president of the Toxaway Hotel Company, Lake Toxaway, N. C. We are pleased to be advised by your good firm that we will be perfectly safe in shipping the Toxaway Hotel Company what they desire, and bills will be taken care of properly. We also note that you have guaranteed payment of car order, which we are now preparing for shipment. We are pleased to accept your guaranty and liability hereunder," etc. Thereupon Armour & Company shipped to the Toxaway Hotel Company the car-load of hotel supplies which had been previously ordered and which formed the subject-matter of the foregoing correspondence. It was not paid for, and the hotel company was adjudicated a bankrupt. Armour & Company thereupon brought suit against Bluthenthal & Bickart for the price of the supplies. The petition sets forth in full the correspondence, and alleges, that the firm of Bluthenthal & Bickart was composed of Mrs. Aaron Bluthenthal and Monroe L Bickart, who owned the majority of the stock in the Toxaway Hotel Company and were officers and directors of the company; that Armour & Company accepted the guaranty of Bluthenthal & Bickart, and upon the faith of the guaranty furnished to the hotel company the car-load of hotel supplies, and that these supplies had been received and used by the hotel company.

Bluthenthal & Bickart filed a general demurrer to the petition, and also filed various special demurrers. The trial court, after amendment of the petition, overruled the special demurrers, sustained the general demurrer, and dismissed the petition, rendering the following judgment: "In my opinion the contract of defendants is that of suretyship, and to be strictly construed in their favor. It is written, and its terms do not include the car-load of merchandise itemized; they, by the contract, did not promise to pay for these goods. If they intended these goods to be covered by their contract, it would require parol evidence to show this, which would only be admissible in a court of equity to change the language of the contract and reform it. This court is without such jurisdiction. The grounds of special demurrer are overruled, amendments being filed by plaintiff, but the general demurrer is sustained and the plaintiff's petition is dismissed." The plaintiffs except to the judgment sustaining the general demurrer and dismissing the petition, and the defendants except to the judgment overruling the special demurrers and bring a cross-bill of exceptions.

We think it wholly unnecessary to confuse the simplicity of the foregoing statement of facts or the liability of the defendants thereunder by the question of equitable reformation of contracts, or the shadowy and sometimes elusive distinction between contracts of suretyship and guaranty. We think the contract in this case needs no reformation, and we further think that, under the facts alleged in the petition as amended, the defendants are clearly liable, whether the contract be construed as one of suretyship or of guaranty. Indeed, the learned counsel for the defendants seem to attach little importance to the question as to the form of the contract, whether one of suretyship or guaranty, or to the question of reformation of the contract. In their argument and their brief they take the position that the defendants did not guarantee payment of the car-load of supplies furnished by Armour & Company to the hotel company; that this contract of suretyship or guaranty is expressly limited by its terms to a car-load of "fresh meat," and not to a car-load of hotel supplies, which, although containing some "fresh meat," also contained supplies which could not be embraced or included in the words "fresh meat." To quote the terse expression of their brief, "the whole question turns upon the proposition whether an obligation to be responsible for 'fresh meat' is equivalent to an obligation to be responsible for 'soap.'" We might agree with learned counsel

that an obligation to be responsible for fresh meat is not equivalent to an obligation to be responsible for soap. But we are decidedly of the opinion that counsel, judging from the itemized statement of the bill, somewhat understate the amount of fresh meat contained in the car, and very greatly magnify the amount of soap, and we are also very clearly of the opinion that under the allegations of the amended petition, and the correspondence between the parties, the defendants are liable for the car-load of hotel supplies which was furnished to the hotel company on the faith of their guaranty, although there was $82 worth of soap furnished along with about $2,700 worth of fresh meat. The hotel company ordered from Armour & Company an itemized list of hotel supplies. An inspection of this itemized list will show that the itemized fresh meat very largely preponderated. This statement is made on the assumption that the court can judicially distinguish fresh meat from soap and the other items of hotel supplies mentioned. Before filling the order, Armour & Company asked from the hotel company a financial statement. In response to a request for this financial statement the hotel company, through its president, referred Armour & Company to the firm of Bluthenthal & Bickart of Atlanta, Ga. It is clear, from the letter of the Hotel Company to Armour & Company, that they intended and expected the latter to receive the statement of Bluthenthal & Bickart as a substitute for any financial statement; expressing in their letter the conviction that such statement would be entirely satisfactory. It does not appear that the hotel company sent to Bluthenthal & Bickart a copy of the itemized list of hotel supplies which they had previously ordered. It is fair, however, to assume that they did inform Bluthenthal & Bickart that they had ordered a car-load of hotel supplies. This deduction is clearly inferable from the statement contained in the letter of Bluthenthal & Bickart of July 23 to Armour & Company, where they advised the latter that "each shipment that you make to the Toxaway Hotel Company will be perfectly safe, and the bill will be taken care of properly." While this language is general in its terms, when taken in connection with the letter which the president of the hotel company had written to Armour & Company, and which was inclosed to Bluthenthal & Bickart for their approval, it must have been used by Bluthenthal & Bickart for the purpose of inducing Armour & Company

42

to extend credit to the hotel company, and to make the impression on the minds of Armour & Company that the payment of each shipment of hotel supplies to the hotel company was guaranteed by the writers.  Following this general statement, Bluthenthal & Bickart specifically directed Armour & Company to ship to the hotel company "the car of fresh meat that had been ordered" by the president of the latter company, and absolutely and unconditionally guaranteed payment of the bill.  The subject-matter of the correspondence between the parties was a car-load of hotel supplies.  This car-load of hotel supplies did in fact contain a large quantity of fresh meat.  This fact accounts for the expression used by Bluthenthal & Bickart in characterizing the car as one of fresh meat.  The use of these words should be taken in this sense, and not as indicative of the purpose of Bluthenthal & Bickart to limit their guaranty of payment to a car of fresh meat.  In other words, we are clear that this language was simply illustrative and not restrictive, and that the words "car of fresh meat," when considered with the context, have no special legal significance.  A dry-goods store is properly so designated, although the store may also contain some cologne and patent medicines.  If this contract is to be treated as an entire contract, we think the guaranty covers the car of hotel supplies.  But if Bluthenthal & Bickart intended to guarantee payment of the fresh meat only, they should be required to pay for the fresh meat that was furnished on the faith of their guaranty.  We do not think that the contract is entire in the sense that they would be released from payment for the fresh meat, which they admit was expressly covered by this contract and furnished on the faith of such contract, because there were also furnished a few additional hotel supplies not included in the item of "fresh meat."  We know of no principle of law or equity that demands such construction of the contract, and certainly the proposition would not be a luminous example of commercial fair dealing.  We think also that under the facts of this case Bluthenthal & Bickart are estopped from denying liability on their guaranty or promise to pay for the car-load of supplies furnished to the hotel company expressly on the faith of such guaranty or promise.  They knew that the president of the hotel company was seeking credit from Armour & Company for a car-load of hotel supplies.  They were·put on notice by the letter which the hotel

company wrote to Armour & Company, and which was inclosed to them for their approval, that they were expected to furnish to Armour & Company a statement of the financial condition of the hotel company which would be satisfactory. They knew that the president of the hotel company had in advance of such statement, and to induce Armour & Company to rely upon it, informed the latter that the members of the partnership of Bluthenthal & Bickart were officers of the corporation. They knew that the hotel company had ordered from Armour & Company a car-load of hotel supplies. They were chargeable with notice of the contents of the order. They were financially interested in the furnishing of the supplies, for they were not only stockholders, but officers, of the hotel company. They were expressly informed by Armour & Company that they had received their letter of the 23rd of July and had interpreted their promise and guaranty to cover "payment of car order which we are now preparing for shipment." They knew that this interpretation of their guaranty was not limited or restricted to fresh meat, but embraced the car of hotel supplies ordered by the hotel company. If they had not intended that guaranty and promise to apply to all the hotel supplies so ordered, with the knowledge that Armour & Company had so interpreted it, it was their duty, in equity and good conscience, before the shipment, to correct such interpretation. But, with full knowledge of such interpretation of their promise or guaranty by Armour & Company, they, as officers of the hotel company and as stockholders interested in its financial success, permitted Armour & Company to ship the car-load of supplies, and permitted these supplies to be used by the hotel company.

The judgment on the main bill of exceptions is therefore reversed. We concur in the opinion of the learned trial judge that the amendments to the petition fully met all questions covered by the special demurrers, and we therefore affirm the judgment of the court below as to the cross-bill of exceptions.

*Judgment reversed on main bill of exceptions, and affirmed on cross-bill.*